UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

INSTITUTE FOR FREE SPEECH, a Virginia non-profit corporation,

Plaintiff,

v.

FRED JARRETT, in his official and personal capacities as Chair of the Washington Public Disclosure Commission; NANCY ISSERLIS, in her official capacity as Vice-Chair of the Washington Public Disclosure Commission; WILLIAM DOWNING, in his official and personal capacities as a member of the Washington Public Disclosure Commission; RUSSELL LEHMAN, in his personal capacity as a former member of the Washington Public Disclosure Commission; PETER LAVALLEE, in his official capacity as Executive Director of the Washington Public Disclosure Commission; and ROBERT FERGUSON, in his official capacity as Washington's Attorney General,

Defendants.

No. 3:21-cv-5546

COMPLAINT



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

## INTRODUCTION

The American legal profession has a storied history of providing free legal services to those in need. Today the Rules of Professional Conduct enshrine this ethos, providing that "[e]very lawyer has a professional responsibility to assist in the provision of legal services for those unable to pay." RPC 6.1. But the need for free services outstrips the availability.

According to Pro Bono Washington, this state "has a critical need for pro bono assistance to meet a critical access to justice gap." FAQs Pro Bono Washington, *What is pro bono assistance, and why is it important?,* https://www.probonowa.org/faq/#1 (last visited July 13, 2021). For over ten years, this Court has had its own plan for increasing *pro bono* legal services to pro se litigants. General Order 10-05, www.wawd.uscourts.gov/sites/wawd/files/08-12-10GOAdoptingAmendedProBonoPlan.pdf, (last visited June 13, 2021).

But the State of Washington has other plans, at least for those poor who dare to get involved in the political process. If lawyers want to provide free legal services to political or legal dissenters, or even those who just get into a conflict with state regulatory authorities, they can be required to register with the government, file reports, disclose donors, or face the threat of third-party complaints under the Washington Fair Campaign Practices Act (FCPA).

Plaintiff Institute for Free Speech ("IFS"), intends to defend Washingtonians, *pro bono,* against campaign-finance charges that implicate fundamental First Amendment rights. Tim Eyman, rendered destitute by the state's long campaign against his activism, would retain IFS to represent him on appeal of a judgment enforcing a variety of alleged campaign-finance violations. But IFS refrains from providing Eyman (or anyone else in Washington) legal services because it cannot risk triggering government reporting requirements or getting drawn into collateral



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

litigation targeting its First Amendment speech and associational rights. Accordingly, IFS petitioned the Public Disclosure Commission ("PDC") for a declaratory order to that effect, but the Commission's order avoided many of the central issues raised by IFS and left it in legal jeopardy, chilling its rights to free speech and association.

The PDC has no business regulating the provision of *pro bono* legal services. Doing so violates the First Amendment—it discourages the provision of legal services, benefits the PDC, and fails to promote any state anti-corruption or transparency interests. This court should enjoin the application of Washington's FCPA to the provision of *pro bono* legal services provided in a legal-defense posture.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983, as this case raises a federal question under the First and Fourteenth Amendments with respect to Defendants' actions against Plaintiff under color of state law.

2. The PDC and the Attorney General's Office (AGO) have their principal places of business in Olympia, Washington, which is located in Thurston County.

3. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because most parties reside in this judicial district, and all events or omissions giving rise to the claim occurred and are occurring in this judicial district.

## PARTIES

4. Plaintiff IFS promotes and defends the First Amendment rights to freely speak, assemble, publish, and petition the government through strategic litigation, communication, activism, training, research, and education. IFS is a nonprofit, tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code. As such,



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

IFS takes on legal cases that impact free speech rights. IFS only takes cases on a *pro bono* basis.

5. Defendant Fred Jarrett is sued in his personal and official capacities as Chair of the Washington Public Disclosure Commission. Pursuant to RCW Chapter 42.17A et al., the Commission has the legal duty to enforce the FCPA, investigate and refer alleged violations to the Attorney General, maintain reports, audit reporting parties, issue declaratory orders, and adopt rules for the implementation of the FCPA. Mr. Jarrett voted in favor of the declaratory order that burdens IFS's free speech rights.

6. Defendant Nancy Isserlis is sued in her official capacity as Vice Chair of the PDC. Ms. Isserlis voted against the declaratory order that burdens IFS's free speech rights, but has the legal authority to impact those rights negatively and, like the other PDC Commissioners, may yet do so in the future.

7. Defendant William Downing is sued in his official and personal capacities as a member of the PDC. Judge Downing voted in favor of the declaratory order that burdens IFS's free speech rights.

8. Defendant Russell Lehman is sued in his personal capacity as a former member of the PDC. Mr. Lehman voted in favor of the declaratory order that burdens IFS's free speech rights and admitted on the record that the FCPA is "clearly unclear."

9. Defendant Peter Lavallee is sued in his official capacity as Executive Director of the PDC. As such, he has such duties and powers as prescribed and delegated by the PDC to implement and enforce the FCPA.

10. Defendant Robert Ferguson is sued in his official capacity as Washington State Attorney General. As such, he is the state's chief legal officer, which includes enforcing the FCPA and filing enforcement actions referred to the AGO by the PDC.



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

General Ferguson's office is also representing the State in its enforcement action against Tim Eyman.

## FACTS AND BACKGROUND

### *Tim Eyman and The AGO's Enforcement Action*

11. Tim Eyman has been a fixture on this state's political scene for over two decades. His signature issue has been the $30-car-tab initiative, but he is also known for other anti-tax initiatives. He is reviled by this state's Democratic political establishment, and especially government-worker unions, who feel threatened by any potential loss of state revenue. Mr. Eyman also has a long history of conflict with the PDC and the AGO. Some would call him a gadfly, even a rogue actor, but he is in any event a political dissenter.

12. In 2015, the PDC completed an investigation into Mr. Eyman and referred the matter to the AGO who filed an enforcement action against Eyman in Thurston County Superior Court. That action bears Cause Number 17-2-01546-34 ("enforcement action").

13. On February 21, 2021, the state court in that action entered the COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW AND INJUNCTION. Among other things, the findings and conclusions designate Eyman, personally, to be a "continuing political committee" and restrict his rights to be involved in his home state's political process.

14. In addition, the state court's injunction requires that "Eyman shall report, in compliance with the FCPA, any gifts, donations, or any other funds Defendant Eyman receives directly or indirectly unless the funds are (1) segregated and used only to pay for legal defense[.]" The findings do not explicitly mention *pro bono* legal services, nor do they address any potential FCPA obligations on the part of those who donate legal-defense funds or provide *pro bono* legal services to Eyman.



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

15. On April 16, 2021, the Thurston County Superior Court entered final judgment against Eyman.

16. On June 15, 2021, the Thurston County Superior Court denied Eyman's motion for reconsideration, thereby triggering the time-to-appeal clock.

17. On July 16, 2021, Eyman filed a corrected notice of appeal.

18. IFS believes that the restrictions imposed on Mr. Eyman's ability to participate in Washington's political process, as well as the crippling fines he sustained, violate the First Amendment right of free political speech. Accordingly, IFS has an interest in representing Eyman in the appeal of the enforcement action. It is part of IFS's mission to represent individuals whose rights under the U.S. Constitution are violated by government laws or actions, especially in the area of political speech.

19. In particular, IFS believes that the State's designation of Mr. Eyman as a one-man continuing political committee is an instance of breathtaking state overreach—the regulatory equivalent of house arrest. Currently, Mr. Eyman is prohibited from begging for money to support himself or his family without filing reports with the State, a right presently enjoyed by hundreds, if not thousands of homeless persons on the streets of Seattle, Tacoma, and Olympia. He may well be the only person in Washington whom the state has so limited.

20. Some might argue that good reasons support Mr. Eyman's regulatory excommunication from Washington's political process, but at the very least, people can reasonably disagree about that question, which should be litigated with the assistance of counsel.

21. IFS has not represented Mr. Eyman to-date, but would like to represent him in an appeal if the FCPA does not apply to the provision of such *pro bono* legal



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

services. If IFS represented Eyman, it expects the value of its services to exceed $25,000 per year, while the appeal and possible remands continue.

*The PDC's Aggressive Application of the FCPA as to Pro Bono Legal Work*

22. In an action involving the Institute for Justice's (IJ) representation of a recall campaign, the PDC asserted that the provision of *pro bono* legal services was a reportable in-kind contribution, essentially making IJ's legal services subject to the FCPA and characterizing IJ as a campaign contributor. *See* Washington Recall 2: Lawyer Free Speech - Institute for Justice (ij.org), https://ij.org/case/ijvspdc/ (last visited July 13, 2021); see also Pierce County Superior Court (PCSC) Cause No. 13-2-10152-7.

23. That litigation resulted in the Pierce County Superior Court ruling in favor of IJ and finding that the State's

> treatment of free legal assistance to a political committee in a federal civil rights lawsuit as a "contribution," as that term is defined in RCW 42.17A.005(13), is unconstitutional under the U.S. Constitution. Defendants are permanently enjoined from applying any cap on the amount of free legal services a political committee may receive in a federal civil rights case. Defendants are also permanently enjoined from requiring Recall Dale Washam or any other political committee to report free legal services provided by the Institute for Justice, Oldfield & Helsdon PLLC, or any other attorney in a federal civil rights lawsuit as a campaign contribution.

*See* ORDER GRANTING PL. MSJ, PCSC Cause No. 13-2-10152-7.

24. On information and belief, the State did not appeal the Pierce County Superior Court order.

*25.* In *Farris v. Seabrook,* No. 3:11-cv-5431 RJB, 2012 U.S. Dist. LEXIS 159220, at *9 (W.D. Wash. Nov. 6, 2012)*,* the Commission stipulated that "pro bono legal services [ . . . ] with regard to assisting [a person] with the Supreme Court appeal . . . do not constitute a contribution as defined in RCW § 42.17.020(15)(c)" ("Contribution" is now defined in RCW 42.17A.005(15)). But in 2020, Washington's



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

Supreme Court distinguished *Farris* in connection with pre-filing, *pro bono* legal services in connection with local ballot measures. *State v. Evergreen Freedom Found.*, 192 Wash.2d 782, 795, n.11 (2020); *but see id.* at 809-11 (McCloud, J., dissenting) (arguing that definition of "ballot proposition" under former RCW 42.17A.005(4) is unconstitutionally vague, as-applied).

*IFS's Counsel's Communications with the AGO*

26. In order to avoid similar collateral litigation that befell IJ in the recall case, and risk bearing unacceptable burdens on IFS's rights of speech and association merely for providing *pro bono* legal services, on April 12, 2021, IFS's counsel emailed the AGO's counsel of record in the enforcement action, requesting clarification as to the State's position on whether IFS handling Eyman's case on appeal would constitute an in-kind contribution to a political committee or in any way make IFS subject to the FCPA.

27. On April 14, 2021, the AGO's counsel of record declined to offer any clarification and instead referred IFS to the PDC. The AGO also declined to delay entry of judgment in the enforcement action and was silent as to stipulating to the modification of the Thurston County Superior Court's order as to Mr. Eyman's reporting obligations of *pro bono* legal services.

28. Accordingly, IFS requested clarification from the PDC, but the Commission's response only contributed to the sense of uncertainly about whether IFS could exercise its First Amendment rights, without having to register with and report to the same government it would be litigating against on appeal.

*IFS's Petition for a Declaratory Order*

29. On April 21, 2021, IFS filed a petition for declaratory order with the PDC. The petition made IFS's case to the PDC that *pro bono* legal services provided in a



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

defense posture should not be considered reportable contributions in Mr. Eyman's case, even though the State deemed him to be a continuing political committee.

30. IFS concluded its petition with the following request:

> [T]he Commission should enter a binding declaratory order that IFS's provision of *pro bono* legal services to Mr. Eyman, or his bankruptcy estate, in the appeal of the enforcement action:
>
> 1. Would not constitute a reportable in-kind contribution under RCW 42.17A.005(15) or any other provision of the FCPA; and
>
> 2. Would not in any other way make IFS subject to the FCPA, including, that it would not require IFS to make any registration under the FCPA; file any reports under the FCPA; or disclose the identity of its donors, the value of its services, its cost of providing services, or any other information.
>
> In the alternative, if the PDC concludes that IFS's provision of *pro bono* legal services to Mr. Eyman, or his bankruptcy estate, on appeal would be a reportable in-kind contribution, then it should issue an order specifying:
>
> 3. The nature and extent of the reporting required, who must report, and whether and to what extent IFS must publicly disclose its own donors.

31. On May 27, 2021, the PDC considered IFS's petition. The PDC's general counsel presented the PDC staff's assessment, which took the position that providing legal services to Tim Eyman "as an individual" would not be a reportable contribution, but refused to opine about whether Eyman's *de jure* status as a continuing political committee would change the requirement to register or report. Counsel also recommended against reaching the issue of whether IFS would be considered to be an incidental committee or political committee that would be required to register or report.

32. Several times during the hearing, the PDC's general counsel suggested that it was possible that IFS could be deemed to be an incidental committee required to



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

register and report. Far from resolving IFS's concerns, the PDC's general counsel's repeated on-the-record comments exacerbated the uncertainty about whether IFS's provision of legal services to Eyman would subject it to regulation under the FCPA or a third-party complaint asserting as much.

33. Counsel for IFS appeared before the commission via a video platform and presented argument regarding the scope and basis for the petition. IFS's counsel emphasized the need for the PDC's order to resolve the issue of Mr. Eyman's status as a *de jure* continuing political committee, calling it the "elephant in the room." In addition, IFS's counsel asserted that IFS was asking the PDC to opine on whether Mr. Eyman would have to report IFS's legal services to the PDC.

34. Counsel for IFS suggested language that could be added to the order that would resolve its concerns: "The provision of *pro bono* legal services for legal defense is not a contribution or an expenditure under the FCPA and it would not be considered either a contribution or expenditure even if Mr. Eyman is deemed a continuing political committee. The FCPA does not reach provision of legal services that are provided solely in a defense posture in an enforcement action or on appeal." The PDC did not include this language in its declaratory order.

35. Then-Commissioner Lehman, while acknowledging IFS's concerns, expressed concern about providing prospective relief, "especially in an area that is clearly unclear." This statement amounted to an admission that the FCPA is unduly vague, as-applied to IFS's situation.

36. The Commission concluded this portion of the hearing by voting in favor of the PDC's general counsel's proposed order, with minor modifications. Commissioner Isserlis voted against the proposed order.

37. Despite hearing the matter on May 27, 2021, the PDC did not issue its written declaratory order until June 9, 2021.



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

38. Consistent with the PDC general counsel's on-the-record statements during the hearing, the Commission's order specifically avoided answering whether Mr. Eyman's status as a continuing political committee created a reporting or registration obligation for IFS.

39. Specifically, the Commission's order stated:

> The Superior Court has designated Mr. Eyman as a continuing political committee. Whether pro bono legal services provided prospectively to Mr. Eyman in his role as a continuing political committee must be reported is a question reserved for the ongoing jurisdiction of the Superior Court. The Commission declines to interpret the Superior Court's order or to reach issues that remain before the court in active litigation. Whether IFS must register or report may also require additional analysis under RCW 42.17A.205, RCW 42.17A.207, and RCW 42.17A.240; that information is not before the Commission. Under these circumstances, the Commission is unable to issue a binding Declaratory Order absolving IFS from any and all future FCPA registration or reporting requirements in relation to representing Mr. Eyman in his role as a continuing political committee.

40. The order also explicitly avoided reaching whether IFS's representation of Mr. Eyman would create a back-door reporting requirement by way of Mr. Eyman's obligations to report.

41. The order was silent as to what interest the State of Washington has in regulating the provision of *pro bono* legal services rendered in enforcement actions, whether to Mr. Eyman or any other party defending itself from allegations of campaign-finance violations made by the very same State that was requiring parties to register and report.

42. The order was silent as to whether the PDC believed that providing Eyman or persons like him *pro bono* legal services should be exempted from reporting requirements.

43. The order did not note Commissioner Isserlis's no vote and also omitted a dissenting opinion.



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

44. The PDC's order enshrines the uncertainty about the FCPA impacts of any decision by IFS to provide legal services to Mr. Eyman on appeal. It practically invites Tim Eyman's many political enemies to file third-party campaign-finance complaints should IFS provide *pro bono* legal services for defense in a prosecution under the FCPA or an appeal.

45. The PDC's order and its legal counsel's on-the-record speculation about IFS's potential reporting and registration obligations burdens IFS's right to provide *pro bono* legal services to Tim Eyman on appeal, and to other Washingtonians facing FCPA enforcement proceedings, because doing so would create a legal risk that could subject IFS to regulation under the FCPA, require the filing of reports, the potential disclosure of its donors, or require IFS to defend against a third-party complaint lodged with the PDC.

46. IFS wishes to exercise its rights of free speech and association by representing Mr. Eyman on a *pro bono* basis in the appeal of the enforcement action, providing *pro bono* legal services to Eyman should future disputes arise between Eyman and state with respect to his First Amendment rights, and representing other Washingtonians whose First Amendment rights are implicated by FCPA enforcement proceedings. But IFS refrains from providing such representation because it fears that doing so will subject it to regulation under the FCPA, a third-party complaint, or an enforcement action by the PDC or AGO.

## COUNT I
## RIGHTS OF FREE SPEECH AND ASSOCIATION, U.S. CONST., AMENDS. I, XIV, 42 U.S.C. § 1983
## AS-APPLIED CHALLENGE TO RCW CHAPTER 42.17A, WAC 390-17-405, AND THE PDC'S DECLARATORY ORDER NO. 18

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 46.

48. Speech concerning public affairs is the essence of self-government. The First Amendment protects speakers' rights to criticize the government, including when



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

such speech differs from the prevailing views of government officials. It is axiomatic that the First Amendment protects minority viewpoints, including politically unpopular individuals, as well as the right to beg for alms.

49. Long ago, the Supreme Court recognized that the First Amendment rights of speech and association protect the right to solicit *pro bono* clients and advocate for the civil rights of those clients in our courts, without burdensome interference by state authorities. *NAACP v. Button*, 371 U.S. 415 (1963).

50. The right of access to the courts is also subsumed under the First Amendment right to petition the government for a redress of grievances.

51. Although the Supreme Court recognizes a governmental interest in disclosing the identity of donors to electoral campaigns, no such interest attaches to the provision of *pro bono* legal services provided in a defense posture during a campaign-finance enforcement action or appeal.

52. RCW 42.17A.005's definitions of the terms "Contribution" and "Expenditure," are unconstitutional as applied to the provision of *pro bono* legal services provided in a defense posture in an enforcement action or on appeal, whether provided by IFS or another legal service provider.

53. Moreover, because RCW 42.17A.005(15) (definition of "contribution") and the PDC's interpretations of it, including in Declaratory Order No. 18, do not impose similar burdens on the rights of political parties, caucus political committees, candidates, or authorized committees, or those wishing to provide legal services to such entities, RCW 42.17A.005(15) and WAC 390-17-405 unlawfully discriminate against IFS's speech on the basis of its content.

54. The PDC's interpretation of RCW Chapter 42.17A, including in Declaratory Order No. 18 and WAC 390-17-405, are unconstitutional as applied to IFS, or any other legal service provider, in-so-far as they chill the rights of speech and



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

association that may be exercised by providing *pro bono* legal services in a legal-defense posture.

55. By threatening to enforce the provisions of RCW Chapter 42.17A et seq. and WAC 390-17-405 against IFS, Defendants, under color of law, deprive Plaintiff and its donors of the rights of free speech and association in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory as well as preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT II
## VAGUENESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
## AS-APPLIED AS TO RCW CHAPTER 42.17A, WAC 390-17-405, AND THE PDC'S DECLARATORY ORDER NO. 18

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 55.

57. As notice is the first element of due process, the Fourteenth Amendment guarantee of Due Process prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that, however valid their application may in some instances, are so vague as to chill protected speech.

58. As-applied to Plaintiff IFS, Washington's FCPA and the implementing WAC are unconstitutionally vague in three respects: (1) it is unclear whether the provision of *pro bono* legal services to Tim Eyman on appeal, or to similarly situated individuals, would constitute a "contribution" or "expenditure;" (2) it is unclear whether IFS, by virtue of providing *pro bono* legal services to Mr. Eyman on appeal, or to similarly situated individuals, would be deemed an "incidental committee;" (3) it is unclear whether, and to what extent, either IFS, Mr. Eyman, or similarly



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

situated individuals would be required to register with the government or report IFS's provision of *pro bono* legal services.

59. Defendants' failure to clarify the application of the FCPA to IFS in Declaratory Order No. 18 only heightens the sense of uncertainty and discourages the provision of *pro bono* legal services to Mr. Eyman and others. Moreover, this studied lack of clarity benefits only one entity: the State of Washington. It does not benefit the voters of the State of Washington or any person, who, like Mr. Eyman or IFS, might find themselves on the receiving end of state regulatory scrutiny.

60. Commissioner Lehman freely admitted that this area of the FCPA is "clearly unclear."

61. Given the private complaint system, almost any provision of *pro bono* legal services to Mr. Eyman, or others similarly situated, may trigger State investigation and regulation, and it will be only after resolving the administrative complaint that a speaker will know whether their speech is regulable. The statute may trap the innocent by not providing fair warning or foster arbitrary and discriminatory application, and it can also chill speech by operating to inhibit protected expression.

62. By enforcing, or threatening to enforce, RCW Chapter 42.17A et seq. or WAC 390-17-405 against IFS, Defendants, under color of law, deprive Plaintiff and its donors of the rights of free speech, association, and due process in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory as well as preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IFS requests that judgment be entered in its favor as follows:

A. An order preliminarily and permanently enjoining Defendants (except for former Commissioner Lehman, who has resigned), their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing any part of RCW Chapter 42.17A et seq. or WAC 390-17-405 against IFS's for providing *pro bono* legal services to Tim Eyman, or his bankruptcy estate, on appeal or remand, regardless of whether Mr. Eyman is an individual or a *de jure* one-man continuing political committee, or against IFS's provision of *pro bono* legal services to any similarly situated person. Such order should include enjoinder of any finding that the provision of *pro bono* legal services provided in a defense posture in an enforcement action or on appeal is either an "expenditure" or "contribution" as defined by RCW 42.17A.005(15) and (22).

B. Declaratory relief consistent with the injunction, to the effect that the provisions of RCW Chapter 42.17A et seq., including the definitions of RCW 42.17A.005(15) and (22), are unconstitutionally void and unenforceable as-applied to the provision of *pro bono* legal services provided in a defense posture, they violate the First Amendment rights of free speech and association, and the First and Fourteenth Amendments' guarantee against vague laws;

C. An order directing the PDC Commissioners and Executive Director to update the electronic version of the PDC's candidate, committee and enforcement guides and future editions to reflect the injunction and judgment in this case, and to include them on the PDC's website at https://www.pdc.wa.gov/learn/publications until RCW Chapter 42.17A et seq. is amended by the legislature.



INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
202-301-3300

D. Against Defendants Jarrett, Downing, and Lehman, nominal damages in the amount of $17.91;

E. Costs of suit;

F. Attorney's fees and expenses pursuant to 42 U.S.C. § 1988; and

G. Any other relief as the Court deems just and appropriate.

Dated: August 2, 2021

Respectfully submitted,

*s/Endel Kolde*

Endel Kolde, WSBA #25155[1]
INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
(202) 301-1664
Facsimile: (202) 301-3399
dkolde@ifs.org

*Counsel for Plaintiff*

[1] Admitted in Washington State. Not admitted to practice in the District of Columbia. Currently supervised by D.C. licensed attorneys.