The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INSTITUTE FOR FREE SPEECH,

    Plaintiff,

  v.

FRED JARRETT, *et al.*,

    Defendants.

Civil Action No. 3:21-cv-5546-BJR

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

The Institute for Free Speech ("IFS"), a nonprofit 501(c)(3) corporation, brings this action against current and former members of the Washington Public Disclosure Commission ("PDC") both in their official and personal capacities and Robert Ferguson, in his official capacity as Washington State Attorney General (collectively, "Defendants"). Currently before the Court are the parties' cross motions for summary judgment. Dkt. Nos. 4 and 29. Having reviewed the parties' arguments, the record of the case, and the relevant legal authority, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion. The reasoning for the Court's decision follows.

## II.  BACKGROUND

**A.  The Fair Campaign Practices Act and the Public Disclosure Commission**

In 1992, Washington voters passed Initiative Measure No. 134, which, together with Initiative 276 (previously passed in 1972), is referred to as the Fair Campaign Practices Act ("FCPA"). *Voters Educ. Committee v. Washington State Public Disclosure Com'n*, 166 P.3d. 1174, 1180 (Wash. 2007). The intent of the FCPA is "to ferret out … those whose purpose is to influence the political process and subject them to the reporting and disclosure requirements of the Act in the interest of public information." *State v. (1972) Dan J. Evans Campaign Comm.*, 546 P.2d 75, 79 (Wash. 1976). To that end, the FCPA requires political committees,[1] continuing political committees,[2] and incidental committees[3] operating within the State of Washington to register with the State's Public Disclosure Commission ("PDC") and provide information about the committee's contributions and expenditures. *Voters Educ. Committee*, 166 P.3d at 1180; RCW 42.17A *et seq*. The PDC has the authority to determine whether the FCPA has been "violated and to issue orders requiring violators to cease and desist from the activities constituting a violation or, alternatively, to impose other remedies, including civil penalties." *Senate Repub. Campaign Committee v. Public Disclosure Com'n of State of Wash.*, 943 P.2d 1358, 1360 (*citing* RCW 42.17.395). Relevant here, the PDC is also authorized to issue declaratory orders with respect to

---

[1] The statute defines a political committee as "any person (except a candidate or an individual dealing with the candidate's or individual's own funds or property) having the expectation of receiving contributions or making expenditures in support of, or opposition to, any candidate or any ballot proposition." RCW 42.17A.005(41).
[2] A continuing political committee is defined as "a political committee that is an organization of continuing existence not limited to participation in any particular election campaign or election cycle." RCW 47.17A.005(14).
[3] Incidental committee is defined as "any nonprofit organization not otherwise defined as a political committee but that may incidentally make a contribution or an expenditure in excess of the reporting thresholds in RCW 42.17A.235, directly or through a political committee. RCW 42.17A.005(28).

2

the applicability of the FCPA to specified circumstances if an interested party petitions the Commission for such an order. RCW 34.05.240.

### B. The IFS and Tim Eyman

Tim Eyman is a well-known public figure in Washington State, having been a fixture in state politics for over two decades. The State of Washington filed a lawsuit against Mr. Eyman in March 2017, in Thurston County Superior Court, No. 17-2-01546-34, alleging multiple violations of the FCPA relating to Mr. Eyman's activities sponsoring and supporting various ballot initiative campaigns in the State. The Superior Court entered judgment against Mr. Eyman on April 16, 2021, including penalties and injunctive relief sought by the State. Important here, the Superior Court designated Mr. Eyman as a "continuing political committee" and ordered him to report, in compliance with the FCPA, "any gifts, donations, or any other funds" Mr. Eyman receives, "directly or indirectly unless the funds are …segregated and used only to pay for legal defense…". Thurston County Superior Court, Case No. 17-2-01546-34, *Court's Findings of Fact and Conclusions of Law and Injunction*, Conclusion of Law 3.6, February 10, 2021. On July 16, 2021, Mr. Eyman filed a Notice of Appeal with the Washington State Supreme Court.

IFS asserts that it would like to represent Mr. Eyman, *pro bono*, on his appeal and Mr. Eyman has indicated his desire to be represented by IFS. Dkt. No. 37 at ¶ 8. However, IFS is concerned that because the Superior Court designated Mr. Eyman a "continuing political committee", provision of *pro bono* legal services to Mr. Eyman would require IFS to register and/or file reports under the FCPA, including disclosing the identity of its donors, and/or the value and costs of its services. IFS is further concerned that providing the legal services on a *pro bono* basis may constitute an "in-kind contribution" under the FCPA, thus triggering further reporting requirements.

3

IFS petitioned the PDC for a declaratory order "to resolve present uncertainty regarding [the] application of [the FCPA] to the provision of *pro bono* legal services." Dkt. No. 6, Ex. 1 at 1. Specifically, IFS informed the PDC that it intends "to provide *pro bono* legal services on appeal to tax-activist Tim Eyman, who is currently involved in litigation with the State of Washington [] over allegations that he violated the FCPA." *Id*. IFS requested that the PDC enter a declaratory order stating that:

> [IFS's] provision of *pro bono* legal services to Mr. Eyman would not require IFS to (1) make any registration under the FCPA; (2) file any reports under the FCPA; or (3) disclose the identity of its donors, the value of its services, its cost of providing services, or any other information.

*Id*. at 2.

The PDC issued Declaratory Order No. 18 on June 9, 2021. Dkt. No. 6, Ex. 8. As an initial matter, the PDC noted that it reviewed the question of whether IFS' provision of legal services to Mr. Eyman on the appeal triggered any registration or reporting requirements under the FCPA as it applied to IFS only (*i.e.*, the PDC did not address Mr. Eyman's reporting and filing requirements). Next, the PDC clarified that the act of providing legal services to a continuing political committee does not "independently" trigger FCPA registration and reporting requirements for the service provider. Rather, the registration and reporting requirements are triggered only if the service provider, itself, is required to register and/or report under the FCPA (for example, the service provider meets the definition of a political committee or incidental committee under the FCPA). Thus, if IFS is not already required to report to the FCPA, simply providing legal services to Mr. Eyman—even with his current "continuing political committee" designation—will not trigger FCPA registration or reporting requirements for IFS.[4]

---

[4] The PDC noted that it did not have before it the information necessary to determine whether IFS qualifies as an incidental committee, political committee, or continuing political committee.

The PDC next considered whether providing *pro bono* legal services to Mr. Eyman could be considered an in-kind contribution under RCW 42.17A.005(15) triggering a reporting requirement under the FCPA. The PDC noted that "provid[ing] *pro bono* legal services for the purpose of supporting or opposing a ballot proposition have been held to be reportable campaign activity." *Id*. at 8 (citing *State v. Evergreen Freedom Foundation*, 192 Wn.2d 782, 795 (2019)). However, the PDC concluded that providing *pro bono* legal services to Mr. Eyman on his appeal of the Thurston County action would not be a reportable campaign activity because "[s]uch services, provided only to Mr. Eyman in his individual capacity on appeal, would not support or oppose any ongoing or prospective election campaign." *Id*. Based on the foregoing, the PDC issued the following binding declaration:

> *Pro bono* legal services provided prospectively by IFS to Mr. Eyman individually or to his bankrupt estate, for the limited purpose of pursuing an appeal of the court order and judgment against Mr. Eyman in Thurston County Superior Court, No. 17-2-01546-34, does not require IFS to register or report the identity of its donors, the value of its services, its cost of providing services, or any other information to PDC under the FCPA for those legal services.

*Id*. at 9. However, while the PDC unequivocally held that the provision of *pro bono* legal services to Mr. Eyman during his appeal of the Thurston County action would not trigger FCPA registration and reporting requirements for IFS because the appeal did not implicate an ongoing or prospective election campaign, the PDC declined to "issue a binding Declaratory Order absolving IFS from any and all future FCPA registration or reporting requirements in relation to representing Mr. Eyman in his role as a continuing political committee." *Id*.

C. **The Current Lawsuit**

IFS instituted this action on August 2, 2021. It claims that Defendants' interpretation of the FCPA's definition of "contribution" and "expenditure" violates that First Amendment of the Constitution because it encompasses "the provision of *pro bono* legal services provided in a

defensive posture in an enforcement action or on appeal, whether provided by IFS or another legal service provider." Dkt. No. 1 at ¶ 52. Therefore, IFS argues, Defendants' interpretation is "unconstitutional as applied to IFS, or any other legal services provider, in-so-far as [it] chill[s] the rights of speech and association that may be exercised by providing *pro bono* legal services in a defense posture." *Id*. at ¶ 55. IFS further argues that the FCPA and the implementing regulations are "unconstitutionally vague" in violation of the Fourteenth Amendment. *Id*. at ¶ 58. Thus, IFS concludes, "[b]y enforcing, or threatening to enforce [the FCPA and the implementing regulations] against IFS, Defendants, under color of law, deprive Plaintiff and its donors of the rights of free speech, association, and due process in violation of the First and Fourteenth Amendments to the United States Constitution." *Id*. at ¶ 62.

IFS seeks an order from this Court enjoining Defendants "from enforcing [the FCPA and the implementing regulations] against IFS's [*sic*] for providing *pro bono* legal services to Tim Eyman, or his bankruptcy estate, on appeal or remand, regardless of whether Mr. Eyman is an individual or a *de jure* one-man continuing political committee, or against IFS's provision of *pro bono* legal services to any similarly situated person." *Id*. at p. 16, ¶ A. IFS also seeks an injunction declaring that the FCPA, generally, and its definitions of "contribution" and "expenditure" specifically, "are unconstitutionally void and unenforceable as-applied to the provisions of *pro bono* legal services provided in a defense posture, they violate the First Amendment rights of free speech and association, and the First and Fourteenth Amendments' guarantee against vague laws." *Id*. at p. 16, ¶ B. Plaintiff filed a motion for summary judgment the same day that it filed its complaint.

Defendants have cross moved for summary judgment, arguing that this Court lacks jurisdiction over this matter because this litigation does not present an Article III case or

controversy. Alternatively, Defendants argue that they are entitled to summary judgment even if this Court reaches the merits of the case because IFS has failed to demonstrate that Defendants violated its constitutional rights.

### III.   STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also*, *Fair Housing Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### IV.   DISCUSSION

This Court's jurisdiction is limited to "actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). "Article III standing … enforces the Constitution's case-or-controversy requirement." *Id.* quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Thus, standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Here, IFS challenges the constitutionality of the alleged applicability of the FCPA's registration and reporting requirements to the provision of *pro bono* legal services to individuals and/or entities facing enforcement actions by the State. However, before this Court can address

this issue, it must first determine that the question presented constitutes a live "case or controversy" and IFS, as the party asserting federal jurisdiction, carries the burden of establishing its standing under Article III. *DaimlerChrysler*, 546 U.S. at 342. Among other requirements, to meet its burden, IFS must have suffered an "injury in fact", that is, an invasion of a legally protected interest that is (a) concrete and particularized and (b) "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted).

In a pre-enforcement First Amendment case such as the instant case, a plaintiff may establish an injury in fact without first suffering a direct injury from the challenged action. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (noting that the Supreme Court has "endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences"); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (stating that "the inquiry tilts dramatically toward a finding of standing" when the "threatened enforcement effort implicates First Amendment rights"). However, despite this leniency, the plaintiff still must demonstrate that it faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (noting that standing will not exist if the alleged injury is "too imaginary" or "too speculative").

Defendants argue that this lawsuit must be dismissed on the grounds that IFS cannot meet the injury in fact requirement for Article III standing because there is no realistic threat of an enforcement action against IFS. Instead, Defendants argue, IFS is seeking "an advisory opinion" from this Court "about hypothetical situations." Dkt. No. 38 at 6. IFS counters that it satisfies Article III's standing requirement because it faces an "inherent threat of enforcement" by

Defendants if it: (1) represents Mr. Eyman on a *pro bono* basis in his appeal of Thurston County action, or (2) represents Mr. Eyman or similarly situated individuals or entities on a *pro bono* basis in future enforcement actions brought by the State. The Court will address each alleged injury in turn.

### A.     The PDC Declaratory Order

IFS argues that it faces a credible threat of an enforcement action by Defendants if it assumes representation of Mr. Eyman on a *pro bono* basis on his appeal of the Thurston County action and fails to comply with the FCPA registration and reporting requirements. Simply put, IFS is wrong. There is no credible threat of enforcement against IFS based on its proposed *pro bono* representation of Mr. Eyman on the appeal because the PDC's binding Declaratory Order unequivocally states that such action will not trigger FCPA registration or disclosure requirements. *See* Dkt. No. 6, Ex. 8 at 9 ("*Pro bono* legal services provided prospectively by IFS to Mr. Eyman individually or to his bankruptcy estate, for the limited purpose of pursing an appeal of the [Thurston County Court] order and judgment against Mr. Eyman [] does not require IFS to register or report the identity of its donors, the value of its services, its cost of providing services, or any other information to the PDC under the FCPA for those legal services.").

IFS attempts to manufacture a potential risk of future enforcement by Defendants by arguing that "the FCPA's definitions of 'contributions' and 'expenditures' can plausibly be read to apply to IFS' proposed provision of free legal services" to Mr. Eyman. Dkt. No. 34 at 13. But the Declaratory Order specifically addressed that concern and clarified that because IFS's proposed legal services would be provided to Mr. Eyman in his individual capacity on appeal and "would not support or oppose any ongoing or prospective election campaign," the services would not be a reportable in-kind contribution and would not trigger any FCPA requirements. Dkt. No.

6, Ex. 8 at 7. IFS also claims that there is a risk of potential enforcement if it represents Mr. Eyman on his appeal because Mr. Eyman has been designated a "continuing political committee" by the Thurston County Court. Once again, the Declaratory Order specifically addressed this issue, noting that IFS's proposed legal services would be provided to Mr. Eyman in his individual capacity and/or his bankrupt estate and not to Mr. Eyman as a "continuing political committee."

Lastly, IFS argues that the PDC improperly narrowed its petition request to address only whether IFS's provision of *pro bono* legal services to Mr. Eyman on his appeal of the Thurston County action would implicate the FCPA. Instead, IFS argues, the PDC should have addressed whether "the provision of *pro bono* legal services provided in a defensive posture"—whether in an enforcement action or as part of an appeal—to Mr. Eyman or a "similarly situated individual" would trigger the FCPA. Dkt. No. 1, p. 16 at ¶ A. This argument is disingenuous. The petition, itself, clearly limited the issue to IFS's representation of Mr. Eyman on the appeal. *See* Dkt. No. 6, Ex. 1 at 1 ("IFS proposes to provide *pro bono* legal services *on appeal* to tax-activists Tim Eyman, who is currently involved in litigation with the State of Washington [] over allegation that he violated the FCPA.") (emphasis added); ("IFS intends to represent Mr. Eyman *on appeal*.") (emphasis added); p. 2 ("IFS wishes to avoid potential violation of the FCPA's disclosure and contribution limitation provisions if it represents Mr. Eyman *during his appeal*.") (emphasis added); p. 3 ("Expedited consideration by the Commission is necessary because Mr. Eyman's *time to appeal the Thurston County Superior Court's judgment* has either been triggered or is likely to be triggered soon, time is of the essence, and this petition is regarding an active controversy.") (emphasis added); p. 4 ("IFS has an interest in representing [Mr. Eyman] *in the appeal of the enforcement action*.") (emphasis added); p. 6 (IFS seeks a binding declaratory order that representing Tim Eyman or his bankruptcy estate *in the appeal of the enforcement action* on a

*pro bono* basis will not constitute a reportable in-kind contribution under the FCPA, or in any other way make IFS subject to the FCPA.") (emphasis added); p. 9 ("What IFS is proposing is to represent [Mr. Eyman], on a *pro bono* basis, *in the appeal of an enforcement action*, which pertains to past events. That appeal raises potential statutory and constitutional issues and arises in a legal-defense posture, not an active political campaign.") (emphasis added).

Indeed, IFS specifically states that it does not intend to represent Mr. Eyman if he becomes involved in a future political campaign. *Id*. p. 9, fn. 5 ("To [IFS's] knowledge, Eyman is not presently involved in any active political campaign; even if that changes in the future, IFS would only represent him as to past activity in a legal-defense posture."). Therefore, the Court concludes that the PDC properly tailored its Declaratory Order to the only issue before it— whether IFS's provision of *pro bono* legal services to Mr. Eyman on his appeal in the Thurston County action would trigger FCPA registration and reporting requirements. The Declaratory Order stated unequivocally that it would not.

**B.    IFS'S Potential Representation of Mr. Eyman or Similarly Situated Individuals or Entities in Future Enforcement Actions**

Next, IFS argues that it faces a threat of legal action by Defendants because it might provide *pro bono* legal defense services to Mr. Eyman or similarly situated individuals or entities in future enforcement actions brought by the State. Defendants counter that IFS's vague assertions are insufficient to establish Article III standing. Defendants are correct.

Among other things, in evaluating the genuineness of a claimed threat of an enforcement action, courts look to whether the plaintiff has articulated a "concrete plan" to violate the law in question. *Thomas*, 220 F.3d at 1139. The Ninth Circuit has clarified that while a "'concrete plan' plan does not mean cast in stone, the Constitution requires something more than a hypothetical intent to violate the law." *Id*. (stating that the plaintiff must, at a minimum, "specify when, to

11

whom, where, and under what circumstances"). Thus, in *Thomas v. Anchorage Equal Rights Commission*, the Ninth Circuit determined that landlords did not have standing to challenge the constitutionality of an Alaska statute that prohibited a landlord from refusing to rent to a tenant due to marital status based on the landlords' "expressed 'intent' to violate the law on some uncertain day in the future—if and when an unmarried couple attempts to lease one of their rental properties." *Id*. at 1140. Such "some day" intentions do not qualify as a "concrete plan". *Id*.; *see also San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (quoting *Lujan*, 504 U.S. at 564) ("[S]uch 'some day' intentions—without … specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

Here, IFS does not "specify when, to whom, where, or under what circumstances" it might represent others. *Id*. at 1139. Instead, it offers vague, qualified statements of possible future representation. Dkt. No. 36 at ¶ 4 ("We do want to represent other parties in Washington State … *if those cases fit with our mission*…") (emphasis added); ¶ 6 ("I am not aware of any cases other than Tim Eyman's appeal right now, but we do intend to represent parties other than Mr. Eyman against the PDC and AG in the future, *if the case is a good fit for us*.") (emphasis added); ¶ 5 (noting that they might want to represent a company currently involved in an enforcement action if the company went bankrupt). Such statements are nothing more than an "hypothetical intent to violate the law" and, as such, do not give rise to a genuine threat of an enforcement action by Defendants. Thus, IFS cannot satisfy Article III's standing requirement and this case must be dismissed as a matter of law.

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES IFS's motion for summary

judgment [Dkt. No. 4] and GRANTS Defendants' cross motion for summary judgment [Dkt. No. 29]. This matter is DISMISSED.

Dated this 7th day of February 2022.

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge